UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FELLICIA SMITH, | Case No. 22-CV-0159 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MISTELLE STARR, Warden, and KOCH, Captain, being sued in their individual and official capacities, | |
| Defendants. | |

Fellicia Smith, pro se.

Plaintiff Fellicia Smith is incarcerated at the Federal Correctional Institution in Waseca, Minnesota.  In this action, Smith alleges that her civil rights were violated by the warden of her facility (defendant Mistelle Starr) and a corrections officer working at the facility (defendant Koch[1]).  Pursuant to 28 U.S.C. § 1915A(a), Magistrate Judge Elizabeth Cowan Wright reviewed Smith's complaint and, in a Report and Recommendation ("R&R") filed on March 7, 2022, recommended that the Court dismiss Smith's complaint and deny Smith's pending motions.  ECF No. 13.

This matter is now before the Court on Smith's timely objection to the R&R.  ECF No. 14.  In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the Court has

---

[1]Smith's filings do not indicate Captain Koch's first name.

conducted a de novo review. For the reasons that follow, the Court overrules the objection and adopts the R&R.

## I. SMITH'S OBJECTION

The Court assumes familiarity with the facts described in the R&R, as well as with Judge Wright's analysis. Smith makes five main points in her objection. She contends that:

(1) She needs help from a lawyer to make her case effectively. ECF No. 14 at 1, 3.

(2) She tried to exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), but she was left "with no other alternative for remedy other than the court" because Captain Koch's alleged retaliation has put her in fear of further reprisal if she continues to use the Bureau of Prison's ("BOP's") grievance process. *Id.* at 2.

(3) Although her transfer to the special housing unit ("SHU") was not in and of itself a constitutional violation, her constitutional rights were violated because she was not given notice of the transfer and an opportunity "to informally present [her] views" regarding her placement in the SHU. *Id.*

(4) Prison staff unconstitutionally seized her property—specifically, nine months' worth of "legal research involving two pending federal lawsuits and possibly a third"—during her transfer to the SHU. *Id.* at 3.

(5) The *Bivens* remedy should apply to her retaliation claims.  *Id.* at 3–4.

The Court will address each point in turn.

### A.  Appointment of Counsel

In a civil case, unlike in a criminal case, "there is no constitutional or statutory right to appointed counsel."  *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013).  In appropriate cases, a court "may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Whether to appoint counsel to a civil litigant depends on several criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."  *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

These factors weigh against appointing counsel for Smith, who appears to be quite bright and who writes well.  The facts of the case are simple, and Smith has thoroughly investigated those facts on her own.  She pleaded her complaint specifically and clearly, *see generally* ECF No. 1, and she filed two affidavits (including one from a fellow prisoner) and a declaration, ECF Nos. 7–9.  And, because the case has not reached discovery, there is not yet any conflicting testimony that might require the assistance of counsel.

Smith's protestations notwithstanding, she has shown herself quite capable of advocating on her own behalf.  Her complaint adequately presents her claims' factual and legal bases, and the Court has ample information to perform its screening function under the PLRA.  Smith's objection is largely responsive to the R&R's findings, citing relevant case law and making appropriate legal arguments based on that law and the facts.  And, as Smith herself mentions in her objection, she has at least one other pending federal lawsuit,[2] so she has experience navigating the federal-court system.

The Court therefore declines to appoint counsel for Smith.

### B. Exhaustion of Administrative Remedies

Smith's arguments regarding exhaustion under the PLRA are irrelevant.  For one thing, the R&R made no mention of exhaustion.  For another, the Court must *not* consider exhaustion at the preservice-dismissal stage.  Exhaustion is a defendant's burden to plead and prove as an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 211–16 (2007).  Whether Smith has exhausted her administrative remedies simply has no bearing on whether to dismiss her claims now.

---

[2]*See Smith v. Starr*, No. 21-CV-2703 (SRN/BRT) (D. Minn. filed Dec. 20, 2021).

*C. Due-Process Claims*

Although Smith concedes that her transfer to the SHU did not violate her constitutional rights, she maintains that she was entitled to procedural protections she did not receive, including notice and an opportunity to be heard regarding the transfer. ECF No. 14 at 2 (citing *Hewitt v. Helms*, 459 U.S. 460 (1983), *receded from by Sandin v. Conner*, 515 U.S. 472 (1995)).

Smith's reliance on *Hewitt* is mistaken. As the Supreme Court later held in *Sandin*, an inmate is not entitled to procedural protections merely because she is deprived of liberty. Rather, those protections apply only if there is an infringement of the inmate's *protected* liberty interest. A *protected* liberty interest is "generally limited to freedom from restraint" that either "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" (such as a transfer to a psychiatric facility or the forced administration of psychotropic drugs) or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84. Smith's three-day stint in the SHU—even if imposed "without cause"—did not rise to that level and thus did not infringe a protected liberty interest. *Phillips v. Morris*, 320 F.3d 844, 847 (8th Cir. 2003).

Nor does the alleged confiscation of Smith's legal research (even in connection with her transfer to the SHU) convert that transfer into the deprivation of a protected

liberty interest. Liberty interests are analyzed separately from property interests. The liberty-interest inquiry involves a comparison of "the conditions to which the inmate was exposed in segregation with those he or she could 'expect to experience as an ordinary incident of prison life.'" *Id.* (quoting *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)). The seizure of Smith's papers was not a condition of her segregation; once Smith's liberty was restored to its previous level, she did not get her papers back. Rather, the seizure was a property loss, which does not factor into the liberty-interest analysis.

Because Smith's allegations do not amount to a deprivation of her protected liberty interest, the Due Process Clause does not entitle her to the procedural protections she claims.

### D.  Illegal-Seizure Claims

In her objection, Smith argues that her Fourth Amendment rights were violated by prison officials' confiscation of her legal research during her transfer to the SHU. ECF No. 14 at 1, 3. Although Smith did not cite the Fourth Amendment in her complaint, she did refer to the seizure of her papers in her prayer for relief. ECF No. 1 at 13 ("[O]fficers . . . took my property from the housing unit to destroy or lose nine months of legal research and critical information I needed for two legal cases and info I

compiled for a business I plan to start when released."). Even assuming that Smith properly raised these claims, she cannot recover on them.

Prisoners have no reasonable expectation of privacy in personal property in their cells. *Hudson v. Palmer*, 468 U.S. 517, 525–26, 536 (1984) ("We hold that the Fourth Amendment has no applicability to a prison cell."); *see also United States v. Edwards*, 563 F. Supp. 2d 977, 1008–10 (D. Minn. 2008) (no warrant required for search and seizure of evidence in inmate's property tub). Without a reasonable expectation of privacy, Smith cannot state a Fourth Amendment claim for the seizure of her papers.

Nor are Smith's claims saved by construing them as due-process claims. Even if a prison official intentionally destroys a prisoner's property, there is no Due Process Clause violation so long as there is an adequate post-deprivation remedy available to the prisoner. *Hudson*, 468 U.S. at 533. And the BOP provides such a remedy. *See* 28 C.F.R. §§ 543.30–.32 (implementing the Federal Tort Claims Act).

### E. Availability of Bivens Remedies for Retaliation Claims

Last, Smith argues that *Bivens* extends to her First Amendment retaliation claim because she has no alternative remedy. Smith says she cannot rely on the prison-grievance system to remedy the alleged retaliation because it "allows the alleg[]ed retaliator to handle the grievance." ECF No. 14 at 3. While her objection was pending, however, the Supreme Court squarely decided that *Bivens* does not extend to First

Amendment retaliation claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("We also conclude that there is no *Bivens* cause of action for Boule's First Amendment retaliation claim."). And, in any case, Smith *does* have an alternative remedy: She may bypass the defendants altogether and submit her grievance "directly to the appropriate Regional Director." 28 C.F.R. § 542.14(d)(1).

## II. ADDITIONAL ISSUES

### A. *Injunctive Claims*

Congress has authorized claims for nonmonetary relief against both the United States and individual federal officials. *See* 5 U.S.C. § 702; *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not."). Although Smith seeks damages in her complaint, Smith also sets forth a detailed prayer for injunctive relief to prevent future retaliation by the defendants. ECF No. 1 at 12–13.

"A federal court has a 'special obligation' to satisfy itself of its own jurisdiction." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). If a court lacks subject-matter jurisdiction over a claim, then that claim must be dismissed. *Id.* One requirement for subject-matter jurisdiction is that the plaintiff "alleg[e] an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To do so, a plaintiff

seeking injunctive relief must show that she is in danger of sustaining direct injury because of the defendant's conduct and that the danger is "real and immediate," not "conjectural" or "hypothetical." *Id.* at 101–02.  In particular, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (alterations in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Here, Smith has alleged a single, past instance of First Amendment retaliation[3]: her three-day transfer to the SHU because she filed a physical-assault grievance against Captain Koch after he threw an identification card at her.  *See* ECF No. 1 at 5–8.  Smith alleges nothing else to transform the possibility of future retaliation into a "case or controversy of 'sufficient immediacy and reality.'" *Lyons*, 461 U.S. at 104 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)).  As noted above, Smith could bypass the defendants altogether and submit her grievance "directly to the appropriate Regional

---

[3]Smith also says that Captain Koch denied her request for nail polish in retaliation for her disrespectful comments to Warden Starr.  ECF No. 1 at 8–9.  But Smith's comments were not protected by the First Amendment, and thus, even if Captain Koch retaliated against her for making the comments, her constitutional rights were not violated.  *See, e.g.*, *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("And backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected."); *Huff v. Mahon*, 312 F. App'x 530, 532 (4th Cir. 2009) ("An inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments.").

Director." 28 C.F.R. § 542.14(d)(1). The defendants might find out that Smith filed a grievance directly with the regional director—or they might not. The defendants might retaliate if they find out about the grievance—or they might not (especially if they come under closer scrutiny because of Smith's grievance). Nothing alleged by Smith indicates a real and immediate prospect of retaliation.

Because the likelihood of retaliation for filing another grievance is too speculative to give Smith standing to pursue her claims for injunctive relief, this Court does not have jurisdiction over those claims. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 ("Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the court.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992))). Therefore, those claims are dismissed without prejudice.

## B. Official-Capacity Claims

One last matter: Smith brings both individual-capacity and official-capacity claims against the defendants. Although the R&R's analysis applies to Smith's individual-capacity claims, the Court must separately consider whether it has jurisdiction over the official-capacity claims. *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011) (no subject-matter jurisdiction over tort claim against United States if sovereign immunity not waived).

An official-capacity suit against a federal prison official is a suit against the BOP. *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). The United States and its agencies—such as the BOP—enjoy sovereign immunity against suits for damages for constitutional torts. *Id.* And the United States has not waived that immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Thus, the Court lacks jurisdiction over Smith's official-capacity claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiff's objection [ECF No. 14] is OVERRULED.

2. The R&R [ECF No. 13] is ADOPTED.

3. All pending motions in this case [ECF Nos. 2, 3, 5, and 6] are DENIED.

4. Plaintiff's official-capacity claims and injunctive claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

5. Plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 5, 2022

   Patrick J. Schiltz, Chief Judge
   United States District Court